IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CALVIN ADKINS**, *et al.*, | Case No. 1:19-cv-803 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **UNITED STATES OF AMERICA,** | **MEMORANDUM OPINION AND** |
| **Defendants** | **ORDER** |

Currently pending is the Motion for Summary Judgment filed by Defendant United States of America ("the Government"). (Doc. No. 26.) Plaintiff Calvin Adkins ("Adkins") filed a Memorandum in Opposition, to which the Government replied. (Doc. Nos. 28, 29.) Adkins, with leave of Court, filed a surreply. (Doc. No. 30.) For the following reasons, the Government's Motion for Summary Judgment is DENIED.

**I.  Background**

This matter stems from an accident at the Akron, Ohio United States Postal Service ("USPS") facility on May 8, 2016. (Doc. No. 28, PageID# 803.) Plaintiff Calvin Adkins was employed as a truck driver for Thunder Ridge Trucking and transported mail as an independent contractor for the USPS throughout the state of Ohio. (*Id.*; *see also* Doc. No. 29, PageID# 827.) Early in the morning on May 8, 2016, Adkins drove to the Akron USPS facility to drop off and pick up mail. (*Id.*) Adkins waited in the Akron facility near his truck while a USPS employee, Roger Polk ("Polk"), loaded Adkins's trailer with mail via a forklift. (Doc. No. 26-1, PageID# 108.) According to Adkins, Polk was rushing to load boxes of mail into Adkins's truck, inadvertently putting the fork through the cardboard boxes of mail as he loaded them. (Doc. No. 28, PageID# 806.) Before Adkins could depart

the Akron facility, he needed to obtain a "departure slip" so that he could proceed to his next stop, the Columbus, Ohio USPS facility. (Doc. No. 27-1, PageID# 232.) Adkins was standing near the back of his trailer awaiting his departure slip when the accident occurred. (Doc. No. 28, PageID# 803.)

After Polk finished loading Adkins's trailer, he proceeded to operate a "jack-truck." (*Id.*) Polk's jack-truck towed behind it two carts full of mail. (*Id.*) Each cart was approximately eight feet high and four feet wide. (*Id.*) While Adkins stood near his truck, he heard a sudden "bang, bang, bang, bang" sound coming from the jack-truck. (*Id.*) The two carts attached to the jack-truck detached from one another. (*Id.*) One cart collided with a stack of large wire bins on the dock. (*Id.*) The wire bins struck Adkins on the right side of his body. (*Id.*) The force of the bins' impact pushed Adkins's left side against a standing desk nearby. (*Id.*) According to Adkins, his feet left the ground for "a couple minutes" because the force of the bins pushed his body on top of the desk. (*Id.*) Adkins attempted to kick the wire bins away from him so that he could get his feet back onto the ground. (*Id.* at PageID# 804.) Adkins admitted at deposition that he was facing towards his truck at the time of the accident and did not see the wire bins rolling towards him immediately prior to impact. (Doc. No. 27-1, PageID# 242-43, 257.) After the collision, Polk approached Adkins and began pulling the detached cart of mail away from the wire bins so that Adkins could free himself from the wire bins. (*Id.*) Another USPS employee, who was near the standing desk when the incident occurred and witnessed the incident, approached Polk and "yelled at him for driving [the jack-truck] too fast and that he knew better not to do that." (*Id.*)

The Government contends that two USPS employees saw the accident happen, but neither saw if the wire cage actually hit Adkins, or if Adkins was forced across the stand-up desk, such that

2

his feet were lifted off the floor. (Doc. No. 26-1, PageID# 109.) According to the Government, both eyewitnesses asked Adkins if he was alright and if he needed medical attention, but Adkins did not respond. (*Id.*) According to Adkins, USPS employees asked if he needed an ambulance and he declined, saying that he thought he would be alright. (Doc. No. 28, PageID# 804.)

According to the Government, in the aftermath of the accident, USPS employees inspected the jack-truck and "discovered that the tow hook was defective." (Doc. No. 26-1, PageID# 109.) The Government attached two statements from USPS employees describing what they observed to be a broken tow hook on the first cart meant to latch onto the second cart. (*See* Doc. No. 26-1, Decl. Exs. A and B to Ex. C, PageID# 175-76.)

After Adkins received his departure slip, he got into his truck and began driving towards Columbus. (Doc. No. 28, PageID# 804.) However, approximately 40 minutes into the drive, Adkins began experiencing pain in his lower back, as well as numbness in his left leg and foot. (*Id.*) Adkins completed the trip to the Columbus USPS facility because he was delivering mail and, thus, unable to pull over. (*Id.*) Moreover, no other drivers were available to replace him en route to Columbus. (*Id.*; *see also* Doc. No. 27-1, PageID# 264.) Once Adkins reached the Columbus USPS facility, he told a USPS supervisor what happened in Akron and described the pain and numbness. (*Id.*) Adkins was transported to a local emergency room for treatment. (*Id.*) According to Adkins, the May 8, 2016 accident necessitated years of medical treatment for the injuries he sustained at the Akron USPS facility, culminating in back surgery in September 2019. (*Id.*)

Adkins brought an administrative claim against the USPS under the Federal Tort Claims Act ("FTCA") as a result of injuries that Adkins believed he sustained due to USPS employee Polk's alleged negligence in operating the jack-truck. (Doc. No. 1, ¶ 3.) The USPS denied Adkins's

3

administrative claim via letter on January 19, 2019. (*Id.*) Subsequently, Adkins filed his Complaint on April 11, 2019. (*Id.*) Adkins alleged a single claim of personal injury due to the USPS employee's alleged negligence. (*Id.* at ¶¶ 7-12.)

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the

nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III. Analysis

The Government moves for summary judgment on both the duty and causation elements of Adkins's negligence claim. (Doc. No. 26-1.) Although the Government argues in its opening Memorandum that the USPS owed no duty to Adkins because the USPS had no duty to protect Adkins from a defect of which the USPS had no actual or constructive knowledge, the Government concedes in its Reply that the USPS indeed owed Adkins a duty as its business invitee to maintain a safe premises and to remove or warn Adkins of any non-obvious hazards. (*See* Doc. No. 26-1, PageID# 114, Doc. No. 29, PageID# 827.) Still, the Government contends that Adkins cannot establish that the USPS breached its duty to maintain its premises in a safe condition or that any USPS employee acted negligently. Specifically, the Government claims that the USPS had no knowledge, either actual or constructive, of the defective tow hook. (Doc. No. 26-1, PageID# 115.) Moreover, the Government claims that Adkins has no evidence to establish the USPS's prior knowledge that the tow hook latch was broken on May 8, 2016. (*Id.*) Because Adkins offers no evidence that the USPS was aware, or should have been aware, of the defective tow hook, the Government argues that Adkins cannot establish negligence. (*Id.*) Further, the Government argues that Adkins failed to adduce any

5

admissible evidence that Polk operated the jack-truck at excessive speed and, therefore, Adkins has no evidence of general negligence. (Doc. No. 29, PageID# 826.) With respect to causation, the Government argues that the accident did not cause Adkins's injuries, because Adkins already suffered from back and leg injuries prior to the accident and, in any event, Adkins's own actions severed any causal connection. (Doc. No. 26, PageID# 105.)

In his Opposition, Adkins argues that the Government's latent defect argument is irrelevant, as Adkins alleges a general negligence, not premises liability, claim based on a USPS employee's allegedly negligent conduct. (Doc. No. 28, PageID# 806.) Adkins contends that whether there was an alternative cause of the accident is a question of fact for the jury to decide. (*Id.* at PageID# 807.) Moreover, Adkins contends that both his and the Government's expert witness reports demonstrate that the accident caused Adkins serious injury. (*Id.* at PageID# 808.) Upon review, the Court concludes that Adkins's negligence claim may move forward.

Adkins brings this claim under the FTCA, which limits liability to those "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The events underlying Adkins's claims occurred in Ohio. Ohio substantive law therefore applies. *See id.*; *Young v. United States*, 71 F.3d 1238, 1244 (6th Cir. 1995). Under Ohio law, a claim for negligence requires the plaintiff to show that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel*, 909 N.E.2d 120, 122-23 (Ohio 2009).

### A. Whether USPS Owed a Duty to Adkins

The existence of a duty in a negligence action is a question of law for courts to determine. *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989).

In its Reply, the Government concedes that under Ohio premises liability law, the USPS owed Adkins, a duty to maintain a safe premises and to remove, or warn him of, any non-obvious hazards because Adkins was the USPS's business invitee. (Doc. No. 29, PageID# 827.) The Government's concession is well-taken. Indeed, under Ohio law, landowners owe business invitees the highest duty of care. *Plank-Greer v. Tannerite Sports, LLC*, 103 F. Supp. 3d 886, 889 (N.D. Ohio Apr. 21, 2015) (citing *Light v. Ohio University*, 502 N.E.2d 611, 613 (Ohio 1986)). "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner. . . . It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Light*, 502 N.E.2d at 613 (internal citations omitted). Accordingly, the Court concludes that, under Ohio premises liability law, the USPS owed Adkins, a business invitee, a duty to exercise ordinary care and to protect Adkins by maintaining its premises in a safe condition. *Id.*

The Court disagrees with Adkins's argument that premises liability does not apply to the instant matter simply because Adkins alleges that he suffered injuries because of a USPS employee's negligent conduct. Premises liability law supplies the appropriate duty of care in this case because Adkins suffered his alleged injuries while present on the USPS's premises as its business invitee. *See, e.g., Wulf v. Bravo Brio Restaurant Group, Inc.*, 142 N.E.3d 123, 127 (Ohio 12th Dist. Ct. App. 2019) (concluding that, under the principles of premises liability, a restaurant owed an injured patron—undisputedly a business invitee—a duty not to injure the patron via negligent conduct).

However, simply because Ohio premises liability law provides the correct duty of care in the instant matter does not mean that Adkins cannot bring a claim against the Government for an employee's alleged negligent conduct. The USPS still owes Adkins, its business invitee, a duty not to injure Adkins through negligent conduct on its premises. *Id.*; *see also Light*, 502 N.E.2d at 613.

Under Ohio law, "[p]remises tort claims where the alleged negligence arises from static or passive conditions, such as preexisting latent defects, are legally distinct from claims averring active negligence by act or omission." *Simmons v. Am. Pacific Ent., LLC*, 843 N.E.2d 1271, 1276 (Ohio 10th Dist. Ct. App. 2005) (citations omitted); *see also Wulf*, 142 N.E.3d at 127. "The distinction between static and dynamic forms of negligence is legally significant, because it directly correlates to the two separate and distinct duties an occupier owes its business invitees: (1) static conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while (2) **active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises**." *Id.* Thus, "a premises occupier's liability can arise under a static form of negligence through a failure to warn its invitees of a latent or hidden defect on the premises. **Alternatively, it can arise from a dynamic form of negligence if its invitee is injured by its own act or by activities conducted on the premises**." *Id.* at 1277 (emphasis added).

Adkins's single negligence claim falls within this second category. The USPS owed a duty to Adkins not to injure him "by negligent activities conducted on the premises." *Simmons*, 843 N.E.2d at 1276. Having concluded that the USPS owed Adkins such a duty, the Court now turns to whether the USPS breached its duty.

8

**B.     Breach of Duty**

Generally, whether a defendant breached its duty to a plaintiff is a question of fact. *See Gruenbaum v. Werner Enters., Inc.*, No. 09-cv-1041, 2011 WL 563912, at *4 (S.D. Ohio Feb. 2, 2011) (citing *Keister v. Park Centre Lanes*, 443 N.E.2d 532, 537 (Ohio 5th Dist. Ct. App. 1981)). However, where the facts surrounding the alleged negligence are undisputed and susceptible of only one inference, the question is one of law for the court. *Id.* Accordingly, "if different minds can reasonably arrive at no other conclusion than that of the non-existence of the defendant's negligence, or if all the material facts touching the alleged negligence are undisputed and admit of but one rational inference," it becomes a question of law for the court to answer. *Id.* (internal quotations omitted). The Court concludes that there is a genuine dispute of material fact whether the USPS breached its duty to Adkins.

The Government argues that Adkins cannot establish any evidence that the USPS breached its duty to Adkins because Adkins offered no evidence that the USPS knew or should have known about the defective tow hook on the jack-truck. (Doc. No. 29, PageID# 828.) The Government relies on two written witness statements from USPS employees Michael Howard and Polk to support its assertion that the tow hook was defective. (*See* Doc. No. 26-4, Decl. Exs. A and B to Ex. C, PageID# 174-75.) Both Howard and Polk describe observing the broken tow hook in the immediate aftermath of the accident. (*Id.*)

In Howard's statement, he indicates that he and Polk "looked at the tow tail of the first APC [mail cart] and noticed the spring was un latched [*sic*] and the right part of the tow tail popped out of it's [*sic*] frame. Roger then used a seal to shore up the tow tail." (Doc. No. 26-4, Decl. Ex. A to Ex. C, PageID# 174.) According to Polk's statement, "[w]hen John and mail handler Mike Howard and

9

I looked at the tow tail on the first A.P.C. [mail cart] that was hooked to the tow motor we saw that the tail tension spring had come off, allowing the tow tail to fall to the floor releasing the second A.P.C. John said we could probably re-attach the spring but I said if it did it once it will do it again. We then took an orange metal trailer seal and fastened the tow tail to the frame of the A.P.C." (Doc. No. 26-4, Decl. Ex. B to Ex. C, PageID# 175.)

Adkins disputes that a defective tow hook caused the accident. Adkins points out that the Government offered no expert testimony that the tow hook was truly defective, no description of a specific defect within the tow hook, and no explanation as to how any alleged defect caused the two mail carts to disconnect. (Doc. No. 28, PageID# 806.) Instead, Adkins contends that the USPS breached its duty of care when Polk operated the jack-truck at "an excessive and dangerous speed while pulling two heavy carts behind him." (Doc. No. 28, PageID# 806.) As evidence of Polk's excessive speed, Adkins maintains that another USPS employee who observed the accident approached Polk and "yelled" at Polk "for doing what he did." (*Id.*) Specifically, Adkins testified that the other USPS employee yelled at Polk because "he was coming up there too fast, and he knows better not to do that." (*Id.*; *see also* Doc. No. 27-1, PageID# 259.)

Thus, the parties present fundamentally conflicting evidence as to whether the USPS breached its duty of care. Accordingly, the Court concludes that there is are genuine disputes of material fact as to whether Polk operated the jack-truck at excessive speed, resulting in a breach of the USPS's duty to Adkins, whether the tow hook was indeed defective, or merely broken as a result of Polk's alleged excessive speed, and whether, if the tow hook was defective, the USPS lacked notice of the defect until after the accident occurred.

10

The Government argues that Adkins's only evidence of Polk's excessive speed, his deposition testimony in which he repeats the other USPS employee's admonishment of Polk, is "blatant hearsay inadmissible on summary judgment and at trial. (Doc. No. 29, PageID# 825.) This is incorrect. Under Fed. R. Evid. 801(d)(2)(D), an opposing party's statement offered against the opposing party and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D). Neither party disputes that the employee who made the statement was a USPS employee acting within the scope of his employment by the USPS when he made the statement. Accordingly, the employee's admonishment of Polk is not hearsay under Fed. R. Evid. 801(d)(2)(D). *See also, e.g., Wulf*, 142 N.E.3d at 127 (concluding that, per similar Ohio Evid. R. 801(d)(2), "Admission by Party-Opponent," the trial court erred in excluding waitress's repeated apologies to patron as hearsay when her apologies should have been properly admitted as admissions by a party-opponent in patron's negligence case against restaurant). Accordingly, the Court may consider Adkins's evidence that another USPS employee admonished Polk for operating the jack-truck at an excessive speed. Adkins's testimony that another USPS employee admonished Polk for driving too fast conflicts with the Government's contention that a defective tow hook caused the accident.

Moreover, the Court observes that the Government's own evidence indicates that speed may have been a factor in the accident. In support of its Motion, the Government appended Exhibit C, Declaration of Meghan Shaver, to its Memorandum. (*See* Doc. No. 26-4, PageID# 172.) In her Declaration, Shaver, an attorney for the USPS's National Tort Center, represents that, as part of her duties, she has access to records of Administrative Claim Files and that, in her capacity as a National Tort Center attorney, she was responsible for overseeing the adjudication of Adkins's administrative

11

claim. (*Id.* at ¶¶ 1, 2.) Shaver appended three documents from Adkins's administrative claim file to her Declaration, including a "true and correct copy" of a USPS Accident Report, PS Form 1769. (*Id.* at ¶ 6.) The PS Form 1769 lists where the accident occurred, a brief description of the accident, and sections labeled "Involved Person(s)." (Doc. No. 26-4, Decl. Ex. D to Ex. C, PageID# 178-79.) Polk is listed on PS Form 1769 under section "(#2) Involved Person(s)." Within the section under Polk's name is a line labeled "Unsafe Practice(s)." (*Id.*) "Unsafe Practice(s)" lists two practices in a bullet-point list: "Using defective equipment" and "haste." (*Id.* at PageID# 179.) PS Form 1769 provides no other description or indication as to what "haste" means in the accident report. However, an unsafe practice of "haste" tallies with Adkins's deposition testimony that another USPS employee admonished Polk for driving too fast and belies the Government's contention that the USPS did not breach its duty to avoid injuring Adkins through its own negligent conduct.

The weight and credibility to be given to Adkins's deposition testimony as to the opposing party's statements, as well as to the Government's own evidence, including the eyewitnesses' statements about the broken tow hook and the USPS accident reports, are not appropriate summary judgment determinations. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) ("In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.") Consequently, the Court concludes that whether the USPS failed to exercise ordinary care towards Adkins and to protect him by maintaining the premises in a safe condition "presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

### C. Causation

In Ohio, a plaintiff alleging negligence must establish that the breach of duty was the cause in fact and the proximate cause of injury to the plaintiff. *Petre v. Norfolk*, 458 F. Supp. 2d 518, 527 (N.D. Ohio 2006).

> Under Ohio law,
>
> Proximate cause is generally established where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result that would not have taken place without the act." *Petre v. Norfolk S. Ry. Co.*, 458 F. Supp. 2d 518, 527 (N.D.Ohio 2006).
>
> Plaintiff must do more than merely show defendant caused a condition that provided opportunity for other causal agencies to act. *See Whiting v. Ohio Dep't of Mental Health*, 141 Ohio App.3d 198, 203, 750 N.E.2d 644 (2001). Rather, plaintiff must prove defendant's negligence, "*in probability*, proximately caused the [injury]." *Wells v. Miami Valley Hosp.*, 90 Ohio App.3d 840, 848, 631 N.E.2d 642 (Ohio Ct. App. 1993).

*Bailey v. U.S.*, 115 F. Supp. 3d 882, 889 (N.D. Ohio 2015). Typically, proximate cause is a question of fact. *Id.* However, if the plaintiff's evidence on the issue requires mere speculation or conjecture to determine the cause of the resulting injury, the defendant is entitled to summary judgment. *Petre*, 458 F. Supp. 2d at 527.

The Government argues that Adkins cannot establish that the May 8, 2016 accident was the cause in fact or proximate cause of his injuries. (Doc. No. 26-1, PageID# 115-16.) The Government contends that Adkins cannot establish that any purported breach of duty by the USPS was the cause in fact of Adkins's back or leg injuries because Adkins suffered from back and leg injuries since at least 1998. (*Id.* at PageID# 116.) Moreover, the Government argues that Adkins did not initially complain of back pain when he arrived at the Columbus emergency room following the accident. (*Id.* at PageID# 117.) The Government disputes Adkins's expert's conclusion that the May 8, 2016

13

accident "substantially aggravated" Adkins's "pre-existing degenerative disc disease," contending that the Government's own expert conducted a more thorough analysis of all of Adkins's medical records. (*Id.*; *see also* Doc. No. 26-6.) The Government argues that while its own expert opined that Adkins's existing back problems rendered Adkins more likely to develop low bank problems with "modest provocation," and that the accident could have caused such an injury, he does not "definitively opine that [the May 8, 2016 accident] actually did cause the injury." (*Id.*; *see also* Doc. No. 26-2, PageID# 207.)

Further, the Government argues that Adkins cannot establish proximate cause because Adkins failed to follow his physician's advice, which, under Ohio law, "severs the causal connection." (*Id.* at PageID# 119.) The Government argues that, with respect to Adkins's back injuries, Adkins failed to follow his doctor's advice to attend physical therapy for back pain in June 2015. (*Id.*) According to the Government, if Adkins had not failed to do so, he would not have been as susceptible to injury in 2016. (*Id.*) Moreover, Adkins only completed six of his twelve aquatic therapy sessions and six of his eight physical therapy sessions following the May 8, 2016 accident. (*Id.*) Thus, according to the Government, Adkins's actions were a contributory cause of his injuries. (*Id.*) With respect to Adkins's left leg injuries, the Government contends that Adkins similarly failed to follow his physician's advice when, for a few weeks in 2014, Adkins only took half-doses of a prescription medication meant to treat leg edema. (*Id.* at PageID# 121.) Thus, according to the Government, Adkins's failure to follow his physician's directions in 2014 made him more susceptible to injury in 2016. (*Id.*)

Adkins disputes the Government's causation arguments. According to Adkins, his medical expert opined that Adkins "sustained a substantial aggravation of preexisting degenerative disc

14

disease at L4-5 and left L5 radiculopathy as a direct result of the incident." (Doc. No. 28, PageID# 808; *see also* Doc. No. 26-5, PageID# 185-86.) Adkins further argues that, contrary to the Government's position, the Government's own expert acknowledged that Adkins suffered injuries as a result of the May 8, 2016 accident. (*Id.*) Thus, according to Adkins, there is a genuine dispute of material fact as to the issue of proximate causation. The Court agrees.

The parties present conflicting expert medical reports. The Government's causation arguments essentially boil down to a request that this Court place more weight on the Government's expert witness report than Adkins's. This the Court may not do. At the summary judgment stage, the Court may not weigh evidence or judge credibility. *See Bennett*, 410 F.3d at 817. Thus, to the extent that Adkins's expert definitively concludes that Adkins's injuries were the direct result of the May 8, 2016 accident while the Government's expert concludes that Adkins's injuries "are reasonably attributable" to the accident, there is a genuine dispute of material fact as to whether the May 8, 2016 accident caused Adkins's injuries.

Moreover, the Government cites several medical malpractice cases for the proposition that a plaintiff's failure to follow his physician's advice can sever the causal connection. (*See* Doc. No. 26-1, PageID# 119.) The Government's cases are readily distinguishable because this is not a medical malpractice case. It is true that Ohio "recognizes the defense of contributory negligence in *medical malpractice* cases." *Lambert v. Shearer*, 616 N.E.2d 965, 976 (Ohio 10th Dist. Ct. App. 1992) (emphasis added). This is not such a case.

Rather, whether Adkins failed to follow his doctor's advice in terms of additional treatment to address Adkins's claimed injuries arising out of the May 8, 2016 accident creates an issue of fact for the jury to decide as to whether Adkins failed to mitigate damages. *See Raniolo v. Edward J.*

15

*DeBartolo Corp.*, No. 99 C.A. 40, 2000 WL 1672890, at *6 (Ohio 7th Dist. Ct. App. Nov. 3, 2000). In *Raniolo*, a plaintiff sustained several injuries in a car accident, but failed to follow all of her doctor's advice in terms of additional treatment to correct her claimed injuries. *Id.* The jury awarded a fraction of the damages she sought at trial. *Id.* at *4. The appellate court held that conflicting testimony about the extent of the plaintiff's injuries, coupled with evidence that the plaintiff did not fully comply with her physician's recommended course of treatment and evidence that the plaintiff had sustained work-related injuries prior to the accident, created an issue of fact for the jury to decide. *Id.* at *6. The appellate court observed that "[e]valuation as to the weight of the evidence and credibility of witnesses are issues for the jury's determination," and that, "given the conflicting nature of the evidence, the jury could have resolved the issues of damages and issues as to the credibility of the witnesses" in the defendant's, rather than the plaintiff's, favor. *Id.* at *6-7.

Similarly, in *Dunn v. Maxey*, the Ohio Court of Appeals concluded that a patient's failure to follow his doctor's recommended course of treatment warranted giving the jury a mitigation of damages instruction. *Dunn v. Maxey*, 118 Ohio App.3d 665, 668 (Ohio 9th Dist. Ct. App. 1997). The *Dunn* court also concluded that whether the plaintiff's preexisting injuries proximately caused his newer injuries was a question of fact reserved for the jury. *Id.* at 671. In *Dunn*, the plaintiff sustained back and leg injuries in a 1994 rear-end automobile collision. *Id.* at 667. Despite his injuries, the jury awarded the plaintiff only a fraction of the damages he sought, and the plaintiff appealed. *Id.* The appellate court upheld the trial court's jury instruction on mitigation of damages because the defendant presented sufficient evidence that the plaintiff failed to follow his doctor's recommended course of treatment when the plaintiff refused to undergo surgery. *Id.* at 668. Further, the appellate court concluded that "there was competent, credible evidence to support the amount of

damages awarded by the jury." *Id.* at 671. Although the plaintiff testified that he had no problems with his back or limitations upon his activities prior to the accident, the defendant offered evidence that most of the plaintiff's "more serious injuries were not the proximate result of this collision," including that damage to the vehicle was not severe, that the plaintiff and his girlfriend drove away after the accident, and that the plaintiff did not seek medical treatment until later that evening. *Id.* The defendant also presented a medical expert who testified that the plaintiff's most serious injuries were likely caused by the 1988 accident and surgery. *Id.* Thus, according to the *Dunn* court, the jury's verdict was consistent with the defendant's theory, rather than that of the plaintiff. *Id.*

As in *Raniolo* and *Dunn*, the Government has presented evidence that Adkins's claimed injuries were not proximately caused by the May 8, 2016 accident, including a report from a medical expert that addresses Adkins's preexisting conditions. And, as in *Raniolo* and *Dunn*, Adkins disputes the Government's proximate causation argument. (Doc. No. 28, PageID# 808.) Adkins asserts that his low back problems, which he sustained in 2002, had resolved by the time the May 8, 2016 accident took place. (*Id.*) Further, as discussed above, Adkins obtained his own medical expert report, in which his expert opines that he sustained "a substantial aggravation of preexisting degenerative disc disease at L4-5 and left L5 radiculopathy as a *direct result* of the incident." (Doc. No. 26-5, PageID# 186.) This conflicting evidence raises several questions, including whether, and to what extent, the May 8, 2016 accident aggravated Adkins's preexisting conditions or caused any injury to him; whether Adkins's decision in 2014 to take half-doses of his prescription for a few weeks and/or Adkins's decision in 2015 to forego physical therapy rendered him more susceptible to injury on May 8, 2016; and whether Adkins's decision to cut short his aquatic physical therapy and standard physical therapy after the May 8, 2016 accident exacerbated his injuries and necessitated his September 2019

17

surgery. These are all questions of fact that must be resolved by a jury. Accordingly, the Court concludes that the issue of proximate cause is for the jury, not the Court, to determine.

## IV. Conclusion

The Court concludes that the USPS owed Adkins a duty to exercise ordinary care and to protect Adkins by maintaining the premises in a safe condition. It is for the jury to decide whether the USPS breached that duty. If the jury decides that the USPS breached its duty of care to Adkins, the jury must then further decide whether that negligence caused Adkins's injuries. Accordingly, for the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 26) is DENIED.

**IT IS SO ORDERED.**

Date: March 29, 2021

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE